UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

NAKIA M.,[1]

Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security,

Defendant.

Case No. 2:21-cv-00322-JC

MEMORANDUM OPINION AND ORDER OF REMAND

[DOCKET NOS. 19, 20]

## I. SUMMARY

On January 13, 2021, plaintiff Nakia M. filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have consented to proceed before the undersigned United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion")

[1]Plaintiff's name is partially redacted to protect his privacy in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

(collectively "Motions"). The Court has taken the Motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; Case Management Order filed on May 10, 2021, ¶ 5.

Based on the record as a whole and the applicable law, the decision of the Commissioner is REVERSED AND REMANDED for further proceedings consistent with this Memorandum Opinion and Order of Remand. In this case, the Administrative Law Judge ("ALJ") materially erred by rejecting plaintiff's subjective symptom testimony without providing adequate reasons.

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On October 4, 2018, plaintiff filed an application for Supplemental Security Income, alleging disability beginning on June 1, 2018, due to bipolar disorder, post traumatic stress disorder, anti social personality disorder, and back, left knee, left elbow, and neck pain. (Administrative Record ("AR") 190-94, 214-15). The ALJ examined the medical record and heard testimony from plaintiff (who was represented by counsel) and a vocational expert. (AR 39-56).

On September 25, 2020, the ALJ determined that plaintiff had not been disabled since the application date. (AR 23-34). Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments: degenerative joint disease of the left elbow and left knee, mild disc bulge in the cervical and lumbar spine, bipolar disorder, and personality disorder (AR 26); (2) plaintiff's impairments, considered individually or in combination, did not meet or medically equal a listed impairment (AR 26-27); (3) plaintiff retained the residual functional capacity to perform light work (20 C.F.R. §§ 404.967(b)), with additional limitations[2] (AR 28-32 (adopting capacity more restricted than those found by

---

[2]The ALJ determined that plaintiff would be limited to: (1) frequent pushing, pulling, and lifting overhead with the left upper extremity; (2) occasional climbing of ladders, ropes, or (continued...)

available medical sources)); (4) plaintiff could not perform his past relevant work but could perform other work existing in significant numbers in the national economy and therefore was not disabled (AR 32-34 (adopting vocational expert testimony at AR 52-55)); and (5) plaintiff's statements regarding the intensity, persistence, and limiting effects of subjective symptoms were not entirely consistent with the medical evidence and other evidence in the record (AR 29-30).

On November 19, 2020, the Appeals Council denied plaintiff's application for review. (AR 8-10).

## III. APPLICABLE LEGAL STANDARDS

### A. Administrative Evaluation of Disability Claims

To qualify for disability benefits, a claimant must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted), superseded by regulation on other grounds as stated in Sisk v. Saul, 820 Fed. App'x 604, 606 (9th Cir. 2020); 20 C.F.R. §§ 404.1505(a), 416.905(a). To be considered disabled, a claimant must have an impairment of such severity that he is incapable of performing work the claimant previously performed ("past relevant work") as well as any other "work which exists in the national economy." Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)).

///

---

[2](...continued)

scaffolds; (3) frequent climbing of ramps and stairs, and frequent balancing, stooping, kneeling, crouching, and crawling; (4) simple tasks, following simple and some detailed written and oral instructions in a routine, low-stress work environment involving few workplace changes, frequent contact with supervisors, occasional contact with coworkers, and no direct contact with the public; and (5) no rapid-paced assembly line work. (AR 28).

To assess whether a claimant is disabled, an ALJ is required to use the five-step sequential evaluation process set forth in Social Security regulations. See Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (describing five-step sequential evaluation process) (citing 20 C.F.R. §§ 404.1520, 416.920). The claimant has the burden of proof at steps one through four – *i.e.*, determination of whether the claimant was engaging in substantial gainful activity (step 1), has a sufficiently severe impairment (step 2), has an impairment or combination of impairments that meets or medically equals one of the conditions listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings") (step 3), and retains the residual functional capacity to perform past relevant work (step 4). Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). The Commissioner has the burden of proof at step five – *i.e.*, establishing that the claimant could perform other work in the national economy. Id.

**B. Federal Court Review of Social Security Disability Decisions**

A federal court may set aside a denial of benefits only when the Commissioner's "final decision" was "based on legal error or not supported by substantial evidence in the record." 42 U.S.C. § 405(g); Trevizo v. Berryhill, 871 F.3d 664, 674 (9th Cir. 2017) (citation and quotation marks omitted). The standard of review in disability cases is "highly deferential." Rounds v. Commissioner of Social Security Administration, 807 F.3d 996, 1002 (9th Cir. 2015) (citation and quotation marks omitted). Thus, an ALJ's decision must be upheld if the evidence could reasonably support either affirming or reversing the decision. Trevizo, 871 F.3d at 674-75 (citations omitted). Even when an ALJ's decision contains error, it must be affirmed if the error was harmless. See Treichler v. Commissioner of Social Security Administration, 775 F.3d 1090, 1099 (9th Cir. 2014) (ALJ error harmless if (1) inconsequential to the ultimate nondisability determination; or (2) ALJ's path may reasonably be discerned despite the error) (citation and quotation marks omitted).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Trevizo, 871 F.3d at 674 (defining "substantial evidence" as "more than a mere scintilla, but less than a preponderance") (citation and quotation marks omitted). When determining whether substantial evidence supports an ALJ's finding, a court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion[.]" Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (citation and quotation marks omitted).

Federal courts review only the reasoning the ALJ provided, and may not affirm the ALJ's decision "on a ground upon which [the ALJ] did not rely." Trevizo, 871 F.3d at 675 (citations omitted). Hence, while an ALJ's decision need not be drafted with "ideal clarity," it must, at a minimum, set forth the ALJ's reasoning "in a way that allows for meaningful review." Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (citing Treichler, 775 F.3d at 1099).

A reviewing court may not conclude that an error was harmless based on independent findings gleaned from the administrative record. Brown-Hunter, 806 F.3d at 492 (citations omitted). When a reviewing court cannot confidently conclude that an error was harmless, a remand for additional investigation or explanation is generally appropriate. See Marsh v. Colvin, 792 F.3d 1170, 1173 (9th Cir. 2015) (citations omitted).

## IV. DISCUSSION

Plaintiff contends that the ALJ erred by improperly rejecting his subjective symptom testimony. (Plaintiff's Motion at 6-16). For the reasons stated below, the Court agrees. Since the Court cannot find that the error was harmless, a remand is warranted.

### A. Pertinent Law

When determining disability, an ALJ is required to consider a claimant's impairment-related pain and other subjective symptoms at each step of the

sequential evaluation process. 20 C.F.R. §§ 404.1529(a), (d), 416.929(a), (d). Accordingly, when a claimant presents "objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms [the claimant] alleged," the ALJ is required to determine the extent to which the claimant's statements regarding the intensity, persistence, and limiting effects of his subjective symptoms ("subjective statements" or "subjective complaints") are consistent with the record evidence as a whole and, consequently, whether any of the individual's symptom-related functional limitations and restrictions are likely to reduce the claimant's capacity to perform work-related activities. 20 C.F.R. §§ 404.1529(a), (c)(4), 416.929(a), (c)(4); SSR 16-3p, 2017 WL 5180304, at *4-*10.[3]

When an individual's subjective statements are inconsistent with other evidence in the record, an ALJ may give less weight to such statements and, in turn, find that the individual's symptoms are less likely to reduce the claimant's capacity to perform work-related activities. See SSR 16-3p, 2017 WL 5180304, at *8. In such cases, when there is no affirmative finding of malingering, an ALJ may "reject" or give less weight to the individual's subjective statements "only by providing specific, clear, and convincing reasons for doing so." Brown-Hunter, 806 F.3d at 488-89. This requirement is very difficult to satisfy. See Trevizo, 871 F.3d at 678 ("The clear and convincing standard is the most demanding required in Social Security cases.") (citation and quotation marks omitted).

An ALJ's decision "must contain specific reasons" supported by substantial evidence in the record for giving less weight to a claimant's statements. SSR 16-3p, 2017 WL 5180304, at *10. An ALJ must clearly identify each subjective

---

[3]Social Security Ruling 16-3p superseded SSR 96-7p and, in part, eliminated use of the term "credibility" from SSA "sub-regulatory policy[]" in order to "clarify that subjective symptom evaluation is not an examination of an individual's [overall character or truthfulness] . . . [and] more closely follow [SSA] regulatory language regarding symptom evaluation." See SSR 16-3p, 2017 WL 5180304, at *1-*2, *10-*11.

statement being rejected and the particular evidence in the record which purportedly undermines the statement. Treichler, 775 F.3d at 1103 (citation omitted). "General findings are insufficient[.]" Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (citations omitted).

If an ALJ's evaluation of a claimant's statements is reasonable and is supported by substantial evidence, it is not the court's role to second-guess it. See Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted). When an ALJ fails properly to discuss a claimant's subjective complaints, however, the error may not be considered harmless "unless [the Court] can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout, 454 F.3d at 1056; see also Brown-Hunter, 806 F.3d at 492 (ALJ's erroneous failure to specify reasons for rejecting claimant testimony "will usually not be harmless").

**B. Summary of Plaintiff's Testimony and Statements**

Plaintiff testified that he stopped working after he was hit by a car on the job in June 2018. (AR 45-46; see also AR 320-23 (report of injury)). Plaintiff attended physical therapy for his knee, but said it did not help and he needed reconstructive surgery. (AR 47-48). He was afraid to schedule the surgery because a relative had undergone a knee replacement surgery that did not go well. (AR 48). He was using a custom knee brace and a cane that he had gotten for himself. (AR 48). In addition to his knee problems, plaintiff said he still had back pain, he recently broke his clavicle (for which he wore a brace/bandage to keep his arm against his body), and he had a "froze [sic] rib" from his accident. (AR 49).

When asked about his ability to perform activities of daily living, plaintiff said that his girlfriend does everything in part due to his broken clavicle which needed time to heal. (AR 49). Plaintiff said he also has glaucoma which had taken away his depth perception and affected his ability to walk and take steps onto curbs without sliding his foot for precaution. (AR 50).

Plaintiff had served time in prison and was required to attend mental health classes as part of his parole. (AR 46-47).[4] He had been taking medications since 2006 for his mental condition that improve his mood but cause him to be tired. (AR 48-49).

Plaintiff's girlfriend had reported in a Disability Report - Appeal form that plaintiff is always in pain, cannot stand for more than five minutes, and has to lie on the hard floor. (AR 237). In July 2018, plaintiff reported to pain management that since his accident he could not stand for too long or move too fast without pain, his left arm was weak and incapable of lifting heavy objects, he had difficulty using his hands, difficulty walking due to left knee pain, and difficulty with balance and the use of his right side while standing. (AR 321-22, 328-29). He had some improvement in functioning from chiropractic treatment, no relief from physical therapy, and some pain relief from massages. (AR 329). He was using a cane, could move from sitting to standing "on his own power," but ambulated with a limp. (AR 329-30).

At his January 2019 psychiatric consultative evaluation, plaintiff reportedly walked without an assistive device with a normal gait, complained of mental problems (nightmares/flashbacks, mood swings, depression, nervousness, racing thoughts, and trouble with concentration and memory), back and left arm problems, vision problems. (AR 304). Plaintiff reported that he could not bathe or dress himself, do household chores, run errands, shop or cook, he did not watch television, read or exercise, and he stayed inside "a lot" but did go outside to his parole office. (AR 305-06).

Plaintiff's therapy records reported that plaintiff had some improvement in his mental health symptoms over time with medication, and he had made some

---

[4]Plaintiff reportedly had been arrested more than 30 times and was released from prision in 2016. (AR 305).

recent attempts to work but he had difficulty maintaining a job. (AR 347-73). On April 23, 2019, plaintiff reported that he was working part time but had obtained new full time employment. (AR 349). On May 23, 2019, plaintiff reported that he was working full time and planning long term goals. (AR 348). By June 20, 2019, plaintiff reported that he had been arrested after an interaction with a belligerent woman at a bus stop, and spent time in jail costing him his new security job. (AR 348; see also AR 347 (plaintiff reporting on July 18, 2019, that he lost his job after missing his parole curfew and having a "7 day flash")). By October 18, 2019, plaintiff had missed three appointments and reportedly was transient and unable to be notified of his next appointment by mail. (AR 346).

**C. Analysis**

The ALJ summarized plaintiff's allegations and testimony. (AR 28-29). The ALJ determined that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in th[e] decision." (AR 29). However, the ALJ failed to provide specific, clear, and convincing reasons to support this determination.

The ALJ explained that despite plaintiff's allegations of pain and limited functioning, "the objective medical findings in the record revealed largely unremarkable findings and symptoms that improved or were otherwise reasonably controlled with conservative treatment modalities." (AR 29). The ALJ discussed the medical evidence showing degenerative joint disease of the left elbow and left knee, mild disc bulge in the cervical and lumbar spine and related MRI findings, limited range of motion with pain and tenderness on examination, and positive Hawkins and Adduction shoulder tests. (AR 29-30 (citing AR 298-301, 328-38)). However, the ALJ found that because: (1) at his pain management evaluation, plaintiff admitted improvement from chiropractic care, was able to alternate

between sitting and standing "on his own power," was able to perform a mini squat, and had negative straight leg raising testing; (2) at his psychiatric consultative evaluation, plaintiff had ambulated without a cane; and (3) at his orthopedic consultative evaluation, plaintiff was able to ambulate without an antalgic gait, and had normal strength and sensation in his extremities, "the residual functional capacity determined herein reasonably accounts for plaintiff's degenerative joint disease of the left elbow, . . . left knee, and mild disc bulge in the cervical and lumbar spine." (AR 30 (citing AR 299, 301, 304, 329-30)).

The ALJ also acknowledged plaintiff's mental health history was significant for trauma, multiple suicide attempts, admission to the Vacaville State Prison psychiatric unit, and outpatient treatment, with accompanying mental health complaints and a diagnosis of depressive disorder with psychotic features (rule out adjustment disorder with mixed depression and anxious features). (AR 30 (citing AR 304-05, 329, 353-54)). However, the ALJ found that because: (1) plaintiff's mental status examination at his psychiatric consultative examination demonstrated "negative findings . . . aside from poor eye contact or slightly pressured speech and mildly diminished memory and concentration"; (2) that same month plaintiff reportedly denied manic symptoms and reported his medications were "effective"; (3) by April 2019, plaintiff's paranoid delusions notedly had improved with medication; and (4) subsequent mental health treatment records noted plaintiff denied hallucinations, stated he was doing well and taking his medications and exhibited good insight and normal mood, "the residual functional capacity determined herein reasonably accounts for the claimant's depression, bipolar disorder, and personality disorder." (AR 30 (citing AR 306, 347, 350, 354, 358)).

A purported lack of supporting objective medical evidence is not – in and of itself – a sufficient basis to discount a claimant's testimony, but may be a relevant factor. See, e.g., Burch, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ

can consider in his credibility analysis."). Even so, the ALJ did not specify or explain how any of plaintiff's medical evidence undermined or contradicted his statements. The ALJ instead simply referenced plaintiff's examination findings and found that the residual functional capacity assessment reasonably accounted for plaintiff's impairments. (AR 29-30). The ALJ failed to explain how these findings support the rejection of plaintiff's statements – including, among other things, his statements that his pain interfered with his ability to stand for too long, he had difficulty using his left arm and his hands, he had difficulty walking and seeing, and he could not use his left arm due to a broken clavicle. See Lambert v. Saul, 980 F.3d 1266, 1278 (9th Cir. 2020) ("Although the ALJ did provide a relatively detailed overview of [plaintiff's] medical history, 'providing a summary of medical evidence . . . is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible.") (quoting Brown-Hunter, 806 F.3d at 494); see also id. at 1268 ("[T]he ALJ must identify the specific testimony that he discredited and explain the evidence undermining it.").

Defendant points out that the ALJ also referenced plaintiff's symptoms as improved or otherwise reasonably controlled with "conservative treatment modalities." See Defendant's Motion at 4-6 (referencing AR 29-30). To the extent the ALJ relied on plaintiff's reported improvement from conservative treatment in discounting plaintiff's statements, an ALJ may give less weight to a claimant's subjective complaints where the claimant has been adequately treated with conservative measures. See Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (evidence that claimant "responded favorably to conservative treatment" inconsistent with reports of disabling pain); Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment.") (citation omitted), cert. denied, 552 U.S. 1141 (2008); SSR 16-3p, 2016 WL 1119029, at *7-*8 (ALJ may give less weight to subjective statements where "the frequency or extent of the

treatment sought by an individual is not comparable with the degree of the individual's subjective complaints. . . ."); SSR 96-7p, 1996 WL 374186, at *7 (a "[claimant's] statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints. . .").

Here, however, plaintiff's brief mention during one examination that he had improved functioning with chiropractic treatment and some pain relief from massages, while also reporting that since his accident he could not stand for too long or move too fast without pain, his left arm was weak and incapable of lifting heavy objects, and he had difficulty walking due to left knee pain and walked with a limp while using a cane (see AR 321-22, 328-29), is not a clear or convincing reason for discounting plaintiff's statements about his physical limits in their entirety without further discussion. Plaintiff also reported he had been referred for knee surgery, which does not suggest that conservative treatment adequately addressed his knee issues. (AR 47-48).

Defendant also cites to plaintiff's report to his social worker in April 2019, that he had obtained new full time employment as suggesting that plaintiff's improved mental condition noted in the record was improved to the point that he would be able to work. See Defendant's Motion at 5-6 (citing AR 283). The ALJ did not cite this as a reason to discount plaintiff's testimony or statements, and the Court is constrained to those reasons the ALJ provided. Trevizo, 871 F.3d at 675. In any event, even if the ALJ had cited this reason, the record shows that plaintiff's work attempt failed and plaintiff became transient. (AR 346-48).

Because the ALJ failed to provide specific, clear, and convincing reasons to discount plaintiff's subjective statements, remand is warranted for reconsideration of these statements. See Treichler, 775 F.3d at 1103 ("Because 'the agency's path' cannot 'reasonably be discerned,' we must reverse the district court's decision to

///

///

the extent it affirmed the ALJ's credibility determination.") (quoting Alaska Dep't of Env't Conserv. v. E.P.A., 540 U.S. 461, 497 (2004)).[5]

**V. CONCLUSION**

For the foregoing reasons, the decision of the Commissioner of Social Security is REVERSED in part, and this matter is REMANDED for further administrative action consistent with this Opinion.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: June 23, 2022

/s/

Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE

[5]Plaintiff also raises a constitutional challenge to the appointment of Commissioner Saul. See Plaintiff's Motion at 16-23. The Ninth Circuit squarely has rejected such a challenge absent a showing of actual harm, which plaintiff has not made here. See Kaufmann v. Kijakazi, 32 F.4th 843 (9th Cir. 2022).